James O. POLLARD, etc., et al.,
Plaintiffs-Appellants,

v.

Lila COCKRELL, etc., et al.,
Defendants-Appellees.

No. 76–3907.

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1978.

Brock Huffman, Robert Mitchell, Charles Campion, San Antonio, Tex., for plaintiffs-appellants.

Crawford B. Reeder, James M. Parker, City Atty., Edgar A. Pfeil, Jane H. Macon, Steven W. Arronge, San Antonio, Tex., for defendants-appellees.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

In this case we review a constitutional challenge to several portions of a massage parlor ordinance adopted by the San Antonio City Council in 1976. Although our task is complicated by several important procedural hurdles—most arising out of a similar challenge contemporaneously filed in state court—we hold that the district court properly exercised its jurisdiction over this case and correctly adjudicated the constitutionality of those portions of the ordinance that it considered. We remand so that the court below may rule upon the remaining challenged sections.

## I. THE FACTS

Finding, in part, that "sexual conduct or the intimation of sexual conduct, rather than the massage of the body, has become the business in fact of many massage busi-

nesses", the city council of San Antonio, Texas, on February 26, 1976, passed an ordinance strictly regulating massage parlors.[1]

In April, 1976, several San Antonio massage parlor owners and masseuses, none of whom are parties in the instant case, filed a complaint in state court alleging that the ordinance violated the Texas and federal constitutions and seeking injunctive and declaratory relief. On June 1, 1976, the state trial court ruled that the ordinance was constitutional with the exception of nine provisions, which it declared unconstitutional and enjoined the city from enforcing.[2] Both parties appealed to an intermediate level state appellate court which, on February 16, 1977, reversed the trial court on procedural grounds and held that the ordinance in its entirety was constitutional. *Holt v. City of San Antonio*, 547 S.W.2d 715 (Ct.Civ.App.Tex.1977). Application for writ of error to the Texas Supreme Court was refused on grounds of "no reversible error."[3]

On June 14, 1976, two weeks after the state trial court's judgment was entered but prior to its reversal on appeal, the instant plaintiffs—two massage parlor owners, two licensed masseuses, and two massage parlor "patrons"—filed suit in federal court pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief on grounds that the ordinance violated the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. After a non-jury trial, the district court on August 25, 1976, entered its findings of fact and conclusions of law. The court held that (1) although the plaintiff owners and masseuses had standing to sue, the plaintiff patrons did not; (2) those por-

tions of the ordinance declared unconstitutional by the state trial court in *Holt* were "not properly before this Court" and presented no case or controversy, (3) with one exception, all sections of the ordinance properly before the court "are constitutional on their face [and as applied] as a valid exercise of police power", and (4) Section 10 of the ordinance, insofar as it requires recording of the type of massage provided to a patron, is unconstitutional on its face. Judgment enjoining enforcement of the "service provided" portion of Section 10 and denying all other relief sought by the plaintiffs was entered on the same day. The plaintiffs timely filed their notice of appeal to this Court.

## II. THE PROCEDURAL ISSUES

### A. *Plaintiff Patrons' Standing to Sue:*

■ In addition to massage parlor owners and masseuses, the complaint in this case named as plaintiffs Edward Camara, Jr., "a prospective and intended patron of massage parlors in San Antonio", and Keith Gates, "a patron of massage parlors in San Antonio". Camara and Gates sought a declaratory judgment that the customer registration and "peephole" provisions of the ordinance are unconstitutional, and each claimed to be "under a genuine threat of enforcement under the ordinance, with a likelihood of arrest and prosecution should he fail to comply with its provisions". The district court found that Camara and Gates "have not made the requisite showing to establish their standing to bring or join in the instant suit". We agree.

"In its constitutional dimension, standing imports justiciability: whether the plaintiff

1. Chapter 18, Art. IV, City Code of San Antonio.

2. The sections found unconstitutional were these: 3(5)(vii) (disclosure of criminal arrests on application for massage business permit), 3(5)(vii) (furnishing of fingerprints on application for massage business permit), 3(6) (police chief may require "such other information . . as he deems necessary" on application for massage business permit), 4(2)(ii) (disclosure of criminal arrests on application for masseur's permit), 4(3) ("such other information" on

masseur's permit), 5 (police chief may require "further information" in investigation of moral character for issuance of massage business or masseur's permit), 12 (white clothing requirement for masseurs), 13 (imputing criminal liability to agent or employee), and 19 (educational requirements).

3. Unpublished. On the meaning of the Texas Supreme Court's refusal of the writ on these grounds, see note 7 *infra*.

has made out a 'case or controversy' between himself and the defendant within the meaning of Article III". *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Essentially, "the question is whether the person whose standing is challenged is a proper party to request an adjudication or a particular issue and not whether the issue itself is justiciable". *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Plaintiffs in the federal courts must have a "personal stake in the outcome" of the case, *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and "must allege some threatened or actual injury resulting from the putatively illegal action". *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). "Abstract injury is not enough. . . . The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

If this were an appeal from a judgment granting the defendants' motion to dismiss for lack of standing, we would be required to accept as true all of the material allegations of the complaint. *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206; *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). However, because we are reviewing a final judgment based upon a fully developed record, we must evaluate standing "from all materials of record". *Warth, supra,* 422 U.S. at 502, 95 S.Ct. at 2207; *City of Hartford v. Town of Glastonbury,* 561 F.2d 1032, 1051 (2d Cir. 1976) (en banc). On this basis, it is clear that neither Camara nor Gates has the requisite " 'personal stake in the outcome of the controversy' " and that each alleges not an injury to him personally but rather "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens". *Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205. First, the record is barren of evidence that Camara or Gates intended to patronize a massage parlor in the future. At no point did Gates allege such an intent; although the complaint did describe Camara as "a prospective and intended patron", Camara testified at trial that the likelihood of his having "gone into a massage parlor someday except for . . . the ordinance" was only a "possibility". R. 296. Second, while the complaint alleged that "the San Antonio Police Department has enforced the ordinance vigorously" and that criminal charges for violation of the ordinance are pending against "at least two patrons . . . who are not Plaintiffs in this lawsuit", neither Camara nor Gates alleged that he was personally threatened with prosecution. Cf. *Steffel v. Thompson,* 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974). To the contrary, Gates testified that on one occasion when he patronized a massage parlor without any identification— in violation of Section 10 of the ordinance— he was merely admonished by a San Antonio police officer who discovered the violation during a routine inspection: "He gave me a lecture about why I wasn't supposed to be in there without my driver's license". R. 293.

We do not hold that patrons or "intended patrons" of massage parlors *per se* lack standing to challenge ordinances regulating such establishments. We hold only that the plaintiff patrons in this case have failed to show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" under 28 U.S.C. § 2201. *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

B. *Preclusive Effect of the State Court Judgment:*

■ The appellants contend that the district court erred in declining to rule upon the nine sections of the ordinance which had earlier been declared unconstitutional by a state trial court in *Holt v. City of San Antonio.*[4] Our consideration of this issue is

---

4. The appellants argue that the district court improperly abstained from exercising its jurisdiction to review these nine sections. However, we do not construe the court's action as

foreclosed, however, by the fact that the *Holt* injunction relied on by the district court was reversed during the pendency of this appeal. See *Concerned Citizens of Vicksburg v. Sills,* 567 F.2d 646 (5th Cir. 1978). It is well established that an appellate court "is obligated to take notice of changes in fact or law occurring during the pendency of a case on appeal which would make a lower court's decision, though perhaps correct at the time of its entry, operate to deny litigants substantial justice". Id., quoting *Hawkes v. I.R.S.,* 467 F.2d 787, 793 (6th Cir. 1972). See also *Michigan Surety Co. v. Service Machinery Corp.,* 277 F.2d 531 (5th Cir. 1960). As the district court viewed this case, the plaintiffs were not entitled to federal review of those portions of the ordinance already nullified by the *Holt* injunction. Since that injunction is no longer in force, and since a state appellate court has ruled that the ordinance in its entirety is constitutional, the plaintiffs would be denied "substantial justice" if the federal review they seek continued to be withheld. The appropriate remedy is to remand to the district court for a ruling on the merits of the plaintiffs' constitutional objections to the nine sections of the ordinance previously but only temporarily declared unconstitutional in state court.

■ Our task is complicated, however, by the appellees' counterargument that federal review of *any* section of the ordinance is precluded under principles of abstention and *res judicata* by the ruling of the Texas Supreme Court in *Holt.* Essentially, the appellees contend that by unreservedly litigating their claims in state court, the plaintiffs in *Holt* foreclosed the federal review sought by the separate plaintiffs in this case. We disagree.

The appellees' argument is based upon an expansive reading of *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), and *Rankin v. State of Florida,* 418 F.2d 482

(5th Cir. 1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 650 (1970). As we explained in *Rankin,* 418 F.2d at 485, the Court in *England* "infused well-known principles of *res judicata* into the arena of abstention" by holding that

> if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forego his right to the District Court. 375 U.S. at 419, 84 S.Ct. at 466–67.

By its terms, *England* dealt only with state and federal lawsuits brought by the same parties. In *Rankin,* we extended *England* to a class action situation, where suits on behalf of the same class of persons had been brought in state and federal court by different class representatives. We described the situation in *Rankin* as follows:

> [T]he same cause of action, involving both state and federal constitutional issues, was brought almost simultaneously in both state and federal courts *by different members of the same class acting in concert.* The state action was litigated first and the plaintiff argued both state and federal constitutional points without reservation. The decision of the state trial court was favorable to the plaintiff . . . [but] [t]he plaintiff lost in the Florida Supreme Court and now seeks a readjudication on the merits in federal district court. 418 F.2d at 485 (emphasis added).

Noting that under the doctrine of *res judicata* a prior valid judgment operates as an absolute bar in another case on the same cause of action between the same parties *and their privies,* we held that the "plaintiff in the federal *class action* is therefore barred from litigating further in the federal court by the final determination of the state *class action,* since the parties and is-

abstention. As its findings of fact and conclusions of law make clear, the court viewed the state court injunction in *Holt* as nullifying nine of the sections challenged; hence, there was

"no case or controversy" with regard to those sections. The abstention doctrine never came into play.

sues were identical in substance, if not in form". Id. at 486 (emphasis added).

The instant case is distinguishable from *Rankin* in that here the state and federal cases were brought by different plaintiffs, none of whom sued in a representative capacity. We thus conclude that this case is controlled not by *Rankin* but by *E. B. Elliott Adv. Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir. 1970), cert. denied, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35, in which we held that two named plaintiffs who were in no way involved in a previous state action challenging a local ordinance, "either as named parties or as members of a class being represented . . . are not bound by these previous adjudications". Id. at 1148. In *Elliott,* four sign companies— Elliott, Donnelly, Outdoor, and Webster— brought a federal class action challenging the constitutionality of an ordinance prohibiting commercial advertising signs on expressways. In 1965, Elliott had sought a state writ of mandamus to compel issuance of an outdoor sign permit; a state appeals court in that case ultimately denied the writ, holding that the ordinance was constitutional. Later, Elliott erected a sign without a permit and was charged with a criminal violation of the ordinance. His defense that the ordinance was unconstitutional was held barred under the doctrine of *res judicata* by the judgment in his earlier suit. Shortly thereafter, Donnelly sought a state declaratory judgment that the ordinance was unconstitutional, but the judgment in Elliott's case was held to be *res judicata.* We held that the prior state adjudications of the challenges brought by Elliott and Donnelly in their individual capacities did not operate as a bar to a subsequent federal action by plaintiffs not involved in or bound by the state actions. We also rejected the argument, made by the appellees in the instant case, that the subsequent federal action constituted an effort to have a federal district court act as an appellate court reviewing state court judgments:

> What is sought here is a *de novo* adjudication of the constitutionality of a county ordinance which had been challenged by some, but not all, of the plaintiffs and

upheld in prior state litigation. . . . The parties in this action who are unaffected by the prior state decisions are entitled to a determination of their constitutional rights under the ordinance, and it is their option whether to invoke the jurisdiction of the federal courts or the state courts. 425 F.2d at 1149.

In an effort to avoid the implications of *Elliott,* the appellees seek to establish privity between the instant plaintiffs and the plaintiffs in *Holt* through the doctrine of "virtual representation". We have recognized that "[u]nder the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative". *Aerojet-General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir. 1975), cert. denied, 432 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). In this case, the appellees argue, the instant plaintiffs and the *Holt* plaintiffs are massage parlor owners and masseuses having identical interests in a determination of the constitutionality of the ordinance. Furthermore, the plaintiffs in each case are represented by the same attorneys and the complaints are identical except for their jurisdictional averments and the state constitutional points raised in *Holt.* On the other hand, the instant plaintiffs alleged in their complaint—and the defendants do not dispute—that they are not associated with any party to the state court proceeding in terms of ownership, control or management.

We hold that the relationship between the instant plaintiffs and the *Holt* plaintiffs does not amount to the close alignment of interests necessary under the virtual representation doctrine. Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues. In reviewing cases decided under the doctrine, we have described the types of relationships contemplated: "estate beneficiaries bound by administrators, presidents and sole stockhold-

ers by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee". *Southwest Airlines Co. v. Texas Intern. Airlines,* 546 F.2d 84, 97 (5th Cir. 1977) (citations omitted). On a similar basis, we have held that, in some contexts, the relationship between a governmental authority as public enforcer of an ordinance and private parties suing for enforcement as private attorneys general "is close enough to preclude relitigation". Id. at 98.[5] In the instant case, however, the state court plaintiffs were in no sense legally accountable to the federal court plaintiffs; they shared only an abstract interest in enjoining enforcement of the ordinance. The *Holt* plaintiffs sued in their individual capacities and not as representatives of a judicially certified class. Representation by the same attorneys cannot furnish the requisite alignment of interests in light of the well established ethical rule that, in areas affecting the merits of the cause or substantially affecting the rights of the client, "the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer". American Bar Association, Code of Professional Responsibility, EC 7–7 (1971).

█ Although the appellees raise the specter of conflicting state and federal pronouncements of the law and the attendant friction between the two systems, we regard such consequences—by no means inevitable—as incident to federalism. As Mr. Justice Rehnquist explained in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), deference to state courts is not mandated in every case where the exercise of federal jurisdiction might produce conflicting outcomes. In *Doran,* the defendants, local law enforcement officials, argued that *Younger* principles[6] should be applied with equal force to each

of three plaintiffs, topless bar owners, even though a criminal prosecution under the challenged ordinance was pending against only one. The Court responded:

We think that the interest of avoiding conflicting outcomes in the litigation of similar issues, while entitled to substantial deference in a unitary system, must of necessity be subordinated to the claims of federalism in this particular area of the law. . . . The same may be said of the interest in conservation of judicial manpower. As worthy a value as this is in a unitary system, the very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system.

We do not agree with the Court of Appeals, therefore, that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes, and should thereby each be entitled to injunctive relief. We cannot accept that view, any more than we can accept petitioner's equally Procrustean view that because M & L would have been barred from injunctive relief had it been the sole plaintiff, Salem and Tim-Rob should likewise be barred not only from injunctive relief but from declaratory relief as well. While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them, this is not such a case;—while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of

---

5. In *Southwest Airlines,* we distinguished *Elliott:* "In *Elliott* a private plaintiff challenged the constitutionality of a city ordinance after another private litigant had lost a similar challenge. The question was whether in the first suit the *private litigant* had represented the interests of the later challenger. Representa-

tion by a government authority never came up because both of the private parties *opposed* the city". 546 F.2d at 99 n. 54.

6. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

ownership, control, and management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone.

422 U.S. at 928–29, 95 S.Ct. at 2566.

We think this language effectively refutes the argument that a proper regard for the principles of federalism requires extension of the virtual representation doctrine to bar federal jurisdiction in this case.

■ All else failing, the appellees argue that the district court should have abstained pending a final disposition of *Holt* by the Texas courts. However, abstention of the type ordered in *Askew v. Hargrave,* 401 U.S. 476; 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) and *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), would not have been appropriate in this case because the ordinance is not "part of an integrated scheme of related [state] constitutional provisions, statutes and regulations . . . where the scheme as a whole calls for clarifying interpretation by the state courts". *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 84–85 n. 8, 95 S.Ct. 870, 876 n. 8, 43 L.Ed.2d 32 (1975). The state law challenge in *Holt* involved only the state constitutional counterpart to the federal bill of rights and thus did not furnish a proper basis for abstention. *Examining Board of Engineers v. Flores de Otero,* 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

C. *Prior Supreme Court Dismissals For Want of a Substantial Federal Question:*

■ On three occasions, the Supreme Court has dismissed appeals from state court decisions upholding the constitutionality of ordinances that prohibit massages by persons of the opposite sex in commercial establishments. *Smith v. Keator,* 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974), *dismissing for want of a substantial federal question,* 285 N.C. 530, 206 S.E.2d 203 (1974); *Rubenstein v. Township of Cherry Hill,* 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974), *dismissing for want of a substantial federal question,* No. 10,027 (N.J. Sup.Ct., Jan. 29, 1974); *Kisley v. City of Falls Church,* 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972), *dismissing for want of a substantial federal question,* 212 Va. 693, 187 S.E.2d 168 (1974). Appellants in those three cases contended that the ordinances established invidiously discriminatory sex-based classifications in violation of the Equal Protection Clause, worked an unreasonable abridgement of the right to pursue a legitimate livelihood, and created an unconstitutional irrebuttable presumption that all massages lead to illicit sexual behavior.

A dismissal of an appeal for want of a substantial federal question is a disposition on the merits of the precise issues raised on appeal. *Hicks v. Miranda,* 422 U.S. 332, 344–46, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975). As the Court recently explained in *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977):

> Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions. . . . The precedential significance of the summary action in [a case], however, is to be assessed in light of all the facts in that case . . . . .

We conclude that the dismissals in *Smith, Rubinstein,* and *Kisley* have little, if any, precedential significance in the instant case. The ordinances challenged in *Smith, Rubinstein,* and *Kisley* prohibited opposite-sex massages. Accordingly, those cases have been held to foreclose consideration of similar federal constitutional challenges to "ordinances identical in all material respects". *Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571, 576 (3d Cir. 1975), cert. denied, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976). See also *Tomlinson v. Mayor of Savannah,* 543 F.2d 570 (5th Cir.

1976); *Hogge v. Johnson,* 526 F.2d 833 (4th Cir. 1975), cert. denied, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976). In contrast, the ordinance in the instant case strictly regulates but does not prohibit opposite-sex massages. Because of this material difference, *Mandel* prevents us from considering the earlier Supreme Court dismissals as dispositive of the issues raised in this case. Our recent interpretation of *Mandel* in *Plante v. Gonzalez,* 575 F.2d 1119, 1125–26 (5th Cir. 1978), is controlling:

> The different facts in *Mandel* [upon which the Court relied to distinguish an earlier dismissal] were the differences between the Pennsylvania and Maryland statutes. Here, the Supreme Court has upheld disclosure provisions in Washington, Illinois, and Maryland statutes. Each statute differs from the others; each differs from the Sunshine Amendment [challenged in *Plante*]. The dismissals by the Supreme Court caution us against finding the Amendment unconstitutional. They [do] not relieve us of our duty "to undertake an independent examination of the merits". (citations omitted).[7]

### III. THE SUBSTANTIVE ISSUES

We now reach the merits of the appellants' constitutional claims.

With one exception,[8] the court below found that all challenged sections of the ordinance which had not been declared unconstitutional by the trial court in *Holt* "are constitutional on their face as a valid exercise of police power". The appellants contend that the district court erred in so holding. Finding no merit in the appellants' arguments against the constitutionality of the ordinance, we affirm.

The appellants' principal challenge to the ordinance is grounded in the Fourteenth Amendment's guarantees of equal protection and due process. The due process attack is clearly without merit in that it attempts to resurrect the long discredited concept of substantive due process and is based specifically upon a 1928 case which the Supreme Court has since overruled and branded "a derelict in the stream of the law".[9] The equal protection attack is a more subtle—but equally fruitless—effort to breathe life into the substantive due process doctrine by requiring strict judicial scrutiny of legislative classifications affecting the right to engage in a lawful business, trade, or profession.

Traditional equal protection analysis grants great deference to legisla-

7. In holding as we do, we reach a result contrary to that of the Texas Court of Civil Appeals in *Holt.* Noting that the Supreme Court had dismissed "appeals from state court decisions upholding constitutionality of massage parlor ordinances", the court in *Holt* concluded: "These decisions foreclose a favorable consideration of appellants' constitutional challenge of the ordinance in question". *Holt v. City of San Antonio,* 547 S.W.2d 715, 716 (Ct. Civ.App.Tex.1977). Whether the Texas Supreme Court accepted this reasoning as the basis for upholding the ordinance is open to question, however. The *Holt* plaintiffs' application for writ of error to the Texas Supreme Court was "Refused: No Reversible Error". Rule 483, Tex.R.Civ.P., provides: "In all cases where the judgment of the Court of Civil Appeals is a correct one and where the principles of law declared in the opinion of the court are correctly determined, the Supreme Court will refuse the application with the docket notation 'Refused'. In all cases where the Supreme Court is not satisfied that the opinion of the Court of Civil Appeals in all respects has cor-

rectly declared the law, but is of the opinion that the application presents no error which requires reversal, the Court will deny the application with the notation 'Refused. No Reversible Error.'"

8. The district court found that portion of Section 10 requiring the recording of the type of massage administered to a patron "to be invalid and unconstitutional on its face". During the pendency of this appeal, the San Antonio City Council amended the ordinance by deleting this "service provided" portion of Section 10. We do not review the district court's holding on this point because the action of the city council has mooted this aspect of the challenge. See *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

9. *North Dakota St. Bd. of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 167, 94 S.Ct. 407, 414, 38 L.Ed.2d 379 (1973), *overruling Liggett Co. v. Baldridge,* 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928).

tive classifications. If "the distinctions drawn have some basis in practical experience", *South Carolina v. Katzenbach,* 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966), or if "any state of facts reasonably may be conceived to justify" them, *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), and they are not drawn "on the basis of criteria wholly unrelated to the objective of [the] statute", *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), then the statute will withstand an equal protection challenge. "But the [Supreme] Court also has refined this traditional test and has said that a statutory classification based upon suspect criteria or affecting 'fundamental rights' will encounter equal protection difficulties unless justified by a '*compelling* governmental interest'." *Schilb v. Kuebel,* 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971). Additionally, in such cases, the state must demonstrate that the classification is "'*necessary* to promote a compelling governmental interest'", *Dunn v. Blumstein,* 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972), i. e., that "less drastic means" are not available to achieve the state's goals.

The appellants cite *Corey v. City of Dallas,* 352 F.Supp. 977, 983 (N.D. Tex.1972), *rev'd on other grounds,* 492 F.2d 496 (5th Cir. 1974), in support of their contention that the ordinance must be subjected to strict judicial scrutiny. The district court in *Corey* reasoned that:

Since the [Dallas massage parlor] ordinance infringes on the basic right to earn a livelihood, then the statutory scheme can only be justified by a compelling governmental interest.

Although this analysis has been adopted by at least two other district courts,[10] we reject it as wholly at odds with controlling legal principles. First, in *Corey* and its progeny, the notion that there is a "fundamental" constitutionally guaranteed right to "pursue a legitimate business" was derived solely from substantive due process cases which have been either discredited or overruled.[11] Without intimating any view as to the nature or scope of this right, we hold that it is not "fundamental" for purposes of equal protection analysis. Second, the theory that classifications affecting the right to pursue a legitimate business demand strict scrutiny flies in the face of the well established rule that state regulations of business or industry are to be reviewed under the less exacting "rational basis" standard. See, e. g., *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* supra, *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Requiring the state to demonstrate that there was no reasonable manner other than that chosen in which to regulate a particular business "would be far too reminiscent of an era when the Court thought the Fourteenth Amendment gave it power to strike down laws 'because they may be unwise, improvi-

10. *Cianciolo v. Members of City Council, Knoxville, Tenn.,* 376 F.Supp. 719 (E.D.Tenn.1974); *Fehlhaber v. Thompson,* Civil No. 1031 (E.D. N.C., September 9, 1974) (unpublished opinion).

11. Each case quoted the following language from *New State Ice Co. v. Liebmann,* 285 U.S. 262, 278, 52 S.Ct. 371, 374, 76 L.Ed. 747 (1932):

Plainly, a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business . . . cannot be upheld consistent with the Fourteenth Amendment. Under that amendment, nothing is more clearly settled than that it is beyond the power of a state, "under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or im-

pose unreasonable and unnecessary restrictions upon them".

In support of this proposition the *Liebmann* Court cited *Liggett Co. v. Baldridge,* a 1928 case which the Court expressly overruled in 1974. See note 9 *supra.* Long before it overruled *Liggett,* the Court observed that "a pronounced shift of emphasis since the *Liggett* case has deprived the words 'unreasonable' and 'arbitrary' of the content" ascribed to them in *Liggett* and its progeny. *Daniel v. Family Security Life Ins. Co.,* 336 U.S. 220, 225, 69 S.Ct. 550, 553, 93 L.Ed. 632 (1949). We agree with the Third Circuit that *Liebmann* is "of questionable relevance today". *Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571, 576 n. 17 (3d Cir. 1975), cert. denied, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976).

dent, or out of harmony with a particular school of thought'." *Dandridge, supra,* 397 U.S. at 484, 90 S.Ct. at 1161. Simply stated, the Equal Protection Clause may not be used "as a vehicle for reinstating notions of substantive due process that have been repudiated". *Kahn v. Shevin,* 416 U.S. 351, 356 n. 10, 94 S.Ct. 1734, 1738 n. 10, 40 L.Ed.2d 189 (1974).

▮ Since this action neither affects fundamental rights nor involves a traditionally suspect classification, we need only determine whether the allegedly discriminatory provisions of the massage parlor ordinance under attack bear a rational relationship to the broad purposes of the ordinance. Cf. *United Health Clubs of America, Inc. v. Strom,* 423 F.Supp. 761, 765 (D.S.C.1976). The scope of our review is thus quite narrow:

> State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan, supra,* 366 U.S. at 425–26, 81 S.Ct. at 1105.

Against the backdrop of these principles, we review those portions of the ordinance which the district court held to be constitutional.

**A.** *Section 21*

▮ At the heart of the appellants' equal protection challenge lies Section 21 which, by exempting several institutions from the coverage of the ordinance, in effect singles out massage parlors for restrictive treatment. Section 21 provides:

> SECTION 21. Exceptions. The provisions of this article shall not apply to hospitals, nursing homes, sanitariums, or persons holding an unrevoked certificate to practice the healing arts under the laws of the state, or persons working under the direction of any such persons or in any such establishment, nor shall this

article apply to barbers, cosmetologists, physical therapists, assistant physical therapists or athletic trainers, lawfully carrying out their particular profession or business and holding a valid, unrevoked license or certificate if (sic) registration issued by the state.

Clearly, the distinction between massage parlors and the institutions exempted under Section 21 is not arbitrary or irrational. In drafting Section 21, the city council probably reasoned that nursing homes, sanitariums, cosmetologists, and others listed are already heavily regulated by state law and thus not in need of additional local regulation, and are not likely to pose the danger— which the ordinance was intended to alleviate—of serving as subterfuges for prostitution. Furthermore, while the institutions exempted from the ordinance are concerned with physical therapy and personal grooming, counsel for appellants stressed at oral argument that his clients serve only recreational and not therapeutic purposes. Section 21 does not work an invidious discrimination. Cf. *United Health Clubs of America, Inc. v. Strom, supra,* 423 F.Supp. at 766; *Rogers v. Miller,* 401 F.Supp. 826, 828 (E.D. Va.1975); *Brown v. Brannon,* 399 F.Supp. 133, 148 (M.D.N.C.1975), aff'd mem., 535 F.2d 1249 (4th Cir. 1976).

**B.** *Section 16:*

▮ As with Section 21, the appellants argue that Section 16, regulating hours of operation, unconstitutionally discriminates against massage parlors because other establishments performing similar services are not so burdened.[12] For the reasons stated above, this argument must fail. We note that even those cases invalidating massage parlor ordinances under substantive due process principles have conceded that regulation of operating hours would be permissible. *Cianciolo, supra,* 376 F.Supp. at 724; *Corey, supra,* 352 F.Supp. at 982.

---

12. "SECTION 16. No massage business shall be kept open for any purpose between the hours of 10:00 P.M. to 8:00 A.M."

C. *Section 12:*

The appellants object to Section 12, dealing with sanitation and health requirements, in that it authorizes warrantless administrative searches allegedly in violation of the Fourth Amendment:

All premises used by permittees hereunder shall be periodically inspected by the police chief or his authorized representative for safety of structure and adequacy of plumbing, ventilation, heating and illumination. . . . Nothing contained herein shall be construed . . . not [sic] to preclude authorized inspection thereof, whenever such inspection is deemed necessary by the police or health departments.

 The Supreme Court has held that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant", *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967), a principle which applies to private commercial as well as residential property. *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). Exempted from the administrative search warrant requirement are industries having "such a history of [pervasive regulation] that no reasonable expectation of privacy . . . could exist·for a proprietor over the stock of such an enterprise". *Marshall v. Barlow's, Inc.,* — U.S. —, —, 98 S.Ct. 1816, 1821, 56 L.Ed.2d 305 (1978). This "carefully defined" class of industries has been held to include liquor, *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and firearms, *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). In such cases, a warrant is not required because "[w]hen an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation". *Barlow's, supra,* — U.S. at —, 98 S.Ct. at 1821. "The businessman in a regulated industry in effect consents to the restrictions placed upon him". *Almeida-Sanchez v. United States,* 413 U.S. 266, 271, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973).

These principles have not been eroded by the Supreme Court's recent decision invalidating the administrative search provisions of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(a) (1970). *Marshall v. Barlow's Inc., supra.* In that case, the Court specifically rejected the argument that its holding "will mean that, as a practical matter, warrantless search provisions in other regulatory statutes are also constitutionally infirm":

The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute. Some of the statutes cited [by the Secretary of Labor] apply only to a single industry, where regulations might already be so pervasive that a *Colonnade-Biswell* exception to the warrant requirement could apply. — U.S. at —, 98 S.Ct. at 1825.

 We hold that the administrative search provisions of Section 12 are not facially unconstitutional. The Indiana Supreme Court recently upheld a similar massage parlor search provision for reasons which we find persuasive in the instant case:

No criminal prosecutions are authorized for refusal to permit inspection, only the license is affected. Notice would seem to be unreasonable given the ease with which some violations could be concealed. It is a business which is being inspected and one which has a history of regulation, Annot. 17 A.L.R.2d 1183 (1951), albeit not as extensive as the liquor or firearms industries, and as a member of a regulated business, a licensee does impliedly consent to inspections at any and all reasonable times and places by obtaining a license . . . . *City of Indianapolis v. Wright,* 371 N.E.2d 1298, 1302 (Ind.1978).

The only material difference between the ordinance upheld in *Wright* and the San Antonio ordinance challenged in this case is that the former limited inspections to "all business hours and . . . other reasonable times". The San Antonio ordinance

purports to leave the time of inspection to the discretion of the police. Although it is conceivable that searches at certain times or with great frequency could be unreasonable, the ordinance on its face does not authorize unreasonable searches. Nor can we presume that the administrative search provisions will be unreasonably applied. On its face, Section 12 authorizes the type of warrantless administrative searches approved in *Biswell* and *Barlow's*.[13]

D. *Section 10:*

The appellants launch a broadside constitutional attack against Section 10, dealing with registration and record keeping. That section, as amended on June 23, 1977, provides as follows:

> Every person who operates a massage business or provides a massage shall at all times keep an accurate appointment book(s) in which the name, age and current address of each and every patron shall be entered, together with the date and name of the masseur providing the massage. Such registration shall be required prior to the rendering of any massage service to any patron. The appointment book shall be available during business hours for inspection, on the premises of the massage establishment, by the police chief and the director of health or their authorized representatives. The appointment book shall be kept upon the business premises throughout the permit year and for one year thereafter. A new appointment book shall be used for each permit year.

Although their precise constitutional objections to this provision are not well defined, the appellants rely upon one case which invalidated a similar provision as an irrational exercise of the police power and an infringement upon the associational and privacy rights of massage parlor patrons. *Fehlhaber v. Thompson*, Civil No. 1031 (E.D.N.C. September 9, 1974) (unpublished opinion).[14] We cannot agree that Section 10 of the San Antonio ordinance is constitutionally infirm for any of these reasons.

As the appellees point out, Section 10 is rationally related to the purposes of the ordinance because it will tend to prevent minors from frequenting massage parlors and to inhibit patrons from soliciting proscribed sexual acts. Under a similar rationale, the Supreme Court has recently upheld the patient identification requirements of a New York statute regulating the prescription drug field:

> There surely was nothing unreasonable in the assumption that the patient-identification requirement might aid in the enforcement of laws designed to minimize the misuse of dangerous drugs. For the requirement could reasonably be expected to have a deterrent effect on potential violators as well as to aid in the detection and investigation of specific instances of apparent abuse. *Whalen v. Roe*, 429 U.S. 589, 597, 97 S.Ct. 869, 875–76, 51 L.Ed.2d 64 (1977).

Assuming, arguendo, that the instant massage parlor owners and masseuses have

---

**13.** The appellants rely on *Hogge v. Hedrick*, 391 F.Supp. 91 (E.D.Va.1974), in which a similar administrative search provision was held to violate the Fourth Amendment. The district court in *Hogge*, however, reached this conclusion based upon an erroneous interpretation of the rationale underlying *Biswell*. The *Hogge* court reasoned that the search in *Biswell* was justified as an "emergency exception to the warrant requirement" because there was an "urgent federal interest" in controlling the traffic in firearms in order to prevent violent crime; the court could find no comparable urgent interest in controlling massage parlors. 391 F.Supp. at 99. But as *Almeida-Sanchez* and *Barlow's* make clear, *Biswell* was based not on exigent circumstances but rather on consent implied from engaging in a pervasively regulat-

ed industry. Hence, we find *Hogge* unpersuasive.

**14.** The appellants also rely on *Hogge v. Hedrick*, note 13, *supra*, in which a comparable record-keeping provision was struck down on equal protection grounds in that other establishments offering similar services were not subject to the same requirements. We find this conclusion unpersuasive in light of our discussion of the equal protection issue raised with regard to Section 21. Additionally, the appellants argue that the identification requirement violates a patron's privilege against self-incrimination. We find this point too frivolous to warrant discussion.

standing to assert the associational and privacy rights of their patrons, the objections raised on their behalf are nevertheless without merit. The Court in *Whalen v. Roe, supra,* effectively disposed of the argument that patient (or patron) registration infringes on the First Amendment freedom of association:

> [T]he patient appellees derive a right to individual anonymity from our freedom of association cases such as *Bates v. City of Little Rock,* 361 U.S. 516, 522–23, 80 S.Ct. 412, 416, 4 L.Ed.2d 480, and *NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171–72, 2 L.Ed.2d 1488. But those cases protect "freedom of association for the purpose of advancing ideas and airing grievances", *Bates v. City of Little Rock,* 361 U.S. at 523, 80 S.Ct. at 416, not anonymity in the course of medical treatment. 429 U.S. at 604 n. 32, 97 S.Ct. at 879 n. 32.

See also *Brown v. Haner,* 410 F.Supp. 399 (W.D.Va.1976).

The Supreme Court has similarly rejected an interpretation of the right to privacy comparable to that advanced by the appellants. In *Paris Adult Theater I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the owners of adult movie theaters argued that their patrons' right to view obscene material in the home, *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), extended to a public commercial theater. The Court responded:

> Even assuming that petitioners have vicarious standing to assert potential customers' rights, it is unavailing to compare a theater, open to the public for a fee, with the private home of *Stanley v. Georgia* . . . and the marital bedroom of *Griswold v. Connecticut,* [381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)]. This Court, has, on numerous occasions, refused to hold that commercial ventures such as a motion picture house are "pri-

vate" for the purpose of civil rights litigation and civil rights statutes. 413 U.S. at 65, 93 S.Ct. at 2639.

We find this reasoning persuasive in the context of public, commercial massage parlors. The constitutional right to privacy is not offended when a person voluntarily entering a massage parlor open to the public and seeking to purchase the services of a masseuse is required to identify himself. Cf. *Stratton v. Drumm,* 445 F.Supp. 1305, 1309 (D.Conn.1978).

### E. *Sections 6A and 6B:*

 Sections 6A and 6B set forth the criteria for issuance of massage business permits and masseur's permits by the chief of police. The appellants contend that these sections deny them due process of law because they do not provide for remedies in the event that a permit is denied.[15] Assuming that massage parlor owners and masseuses would be entitled to due process in the event a permit were denied them, the ordinance's silence as to the procedure to be followed does not amount to a denial of due process. Had the ordinance been drafted to forbid notice and a hearing, it might well have been struck down as facially unconstitutional. As enacted, the ordinance in no way prevents the city from affording whatever process is due when it denies a permit.

### IV. CONCLUSION

In summary, we affirm the district court's conclusions that the plaintiff patrons lack standing to sue and that the challenged sections of the ordinance, with the exception of nine provisions held unconstitutional by the trial court in *Holt,* are constitutional on their face. As to the remaining nine challenged provisions, we remand so that the district court may rule upon the merits of the plaintiffs' constitu-

---

**15.** The appellants also attack Section 9, governing suspension and revocation of permits, as failing to provide the constitutionally required procedural safeguards. During the pendency of this appeal, however, the San Antonio City Council amended Section 9 to pro-

vide for notice and a hearing in cases of revocation and suspension. As we construe the appellants' objections to the original Section 9, the amendment of that section has mooted the attack against it. See note 8 *supra.*

tional objections.[16] Neither the "snow" of *res judicata*, nor the "rain" of virtual representation, nor the "heat" of abstention, nor the "gloom of night" of dismissals for want of a substantial federal question will stay the district court from the swift completion of its appointed round.[17]

AFFIRMED in part; REMANDED in part.

16. The nine sections upon which the district court must rule are those listed in note 2 *supra*.

17. With profound apologies to Herodotus, (Book VIII, 98) and the Main Post Office, New York City.