[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 9, 2007
THOMAS K. KAHN
CLERK

No. 06-13508
Non-Argument Calendar

_____

D. C. Docket No. 05-00352-CV-CG-C

LIONEL GUSTAFSON,
THOMAS M. BROWN, et al.,

Plaintiffs-Appellants,

versus

THE HONORABLE ADRIAN JOHNS,
THE HONORABLE ALFRED Q. BOOTH,
et al.,

Defendants-Appellees,

LOWELL BARRON,
HENRY (HANK) SANDERS,
et al.,

Intervenor-Defendants-
Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(January 9, 2007)**

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellants, nineteen Alabama voters, filed suit challenging Alabama's 2001 legislative redistricting plans, Acts 2001-727 and 2001-729. (Ala. Code § 29-1-2.3 (2001) and Ala. Code § 29-1-1.2 (2001), respectively). Appellants claim that the redistricting plans: (1) violate the constitutional guarantee of one-person, one-vote; (2) constitute illegal partisan gerrymandering; and (3) violate Appellants' First Amendment right to the freedom of association. After conducting a bench trial, the three-judge district court[1] held that all Plaintiffs' claims were barred under the doctrine of res judicata and dismissed Appellants' claims with prejudice. This appealed ensued.

---

[1] Pursuant to 28 U.S.C. § 2284(a), a three-judge federal district court was empaneled to hear this case. Section 2284(a) states that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."

2

## BACKGROUND

On June 16, 2005, Appellants brought this lawsuit against Alabama probate judges to challenge the constitutionality of the 2001 Alabama redistricting plans. The district court allowed Governor Bob Riley to intervene on behalf of the people of Alabama, and Senator Lowell Barron, Senator Hank Sanders, and Representative Seth Hammett also intervened in their individual capacities. Defendants filed a motion for judgment on the pleadings and Senator Lowell Barron, Senator Hank Sanders, and Representative Seth Hammett ("Appellees") filed motions to dismiss.

The district court ordered a bench trial on the issue of res judicata, since the motions to dismiss and the motion for judgment on the pleadings argued that Appellants' claims were barred by previous litigation that challenged the constitutionality of Alabama's 2001 redistricting plans. After reviewing the extensive record in this case, the district court issued an order dismissing Appellants' claims based on res judicata. *Gustafson v. Johns*, 434 F.Supp. 2d 1246 (S.D. Ala. 2006). In the order, the district court set forth a detailed history of the litigation surrounding Alabama's 2001 redistricting plans, and the key players involved in that litigation. *Id*. at 1248-53. The most pertinent of these facts are as follows.

3

In June 2001, two separate lawsuits were filed in federal court, *Barnett v. Alabama* and *Montiel v. Davis*. Both lawsuits alleged that Alabama's legislature had failed to redraw its districts. *Barnett* and *Montiel* were assigned to the same district court judge. After these lawsuits were filed, Alabama's legislature convened a special session to redraw the legislative districts, and the redistricting plans were passed by Alabama's Legislature, signed by the Governor, and passed into law. In light of these developments, Alabama's Attorney General moved to dismiss both the *Barnett* and *Montiel* lawsuits, and the district court ordered the plaintiffs in both cases to respond to the Attorney General's motions. The *Montiel* plaintiffs responded by amending their complaint and directly challenging the constitutionality of the redistricting plans. The *Barnett* plaintiffs did not amend their complaint, and the district court dismissed the case as moot. The *Montiel* plaintiffs alleged that the 2001 redistricting plans violated the constitutional requirements of one-person, one-vote and constituted illegal racial gerrymandering by overpopulating white majority districts and thereby diluting their vote. The district court granted summary judgment in favor of the defendants on both claims. *Montiel v. Davis*, 215 F.Supp. 2d 1279, 1288-89 (S.D. Ala. 2002).

In the case before this Court, the district court found that the lawsuit was being managed by a Litigation Management Committee ("Committee") composed

4

of Jerry Lathan, Senator Stephen French, and Marty Connors. All three had ties to the Republican Party of Alabama. The Committee instigated the present lawsuit after the Supreme Court summarily affirmed a three-judge federal court's decision that Georgia's state legislative reapportionment plans violated the one person, one vote principle. *See Larios v. Cox*, 542 U.S. 947, 124 S. Ct. 2806, 159 L. Ed. 2d 831 (2004). The district court found that the Committee recruited the plaintiffs, hired the lawyers, raised funds, and made litigation decisions. The district court also found that Lathan, French, and Connors were the driving forces behind both the *Montiel* and *Barnett* lawsuits.[2]  After conducting thorough analysis, the district court concluded Appellants' claims were barred based on the doctrine of res judicata given the *Montiel* suit.

## STANDARD OF REVIEW

We review *de novo* a district court's conclusion to apply res judicata. *Equal Employment Opportunity Comm'n v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004). The factual determinations underlying this conclusion are accepted on review unless clearly erroneous. *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir. 1991).

---

[2] While the *Barnett* case was not resolved on the merits, the district court found that the persons driving the *Barnett* lawsuit were fully aware of *Montiel* suit and acquiesced to the final judgment in *Montiel*.

JURISDICTION

As an initial matter, Appellees argue that this Court lacks jurisdiction to hear this appeal, because the United States Supreme Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1253 to hear appeals from three-judge federal courts. Section 1253 states:

> Direct appeals from decisions of three-judge courts. Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

28 U.S.C. § 1253. However, in *MTM, Inc. v. Baxley*, 420 U.S. 799, 804, 95 S. Ct. 1278, 1281, 43 L. Ed. 2d 636 (1975), the United States Supreme Court carved out an exception to § 1253, holding "that a direct appeal will lie to this Court under § 1253 from the order of a three-judge federal court denying interlocutory or permanent injunctive relief only where such order rests upon resolution of the merits of the constitutional claim presented below." Appellees argue that in 1976, a year after *MTM* was decided, Congress repealed the three-judge federal court statute and enacted a new three-judge federal court statute. However, *MTM* has not been overruled, and we are therefore required to follow its holding. Since a finding that a plaintiff's claim is barred by res judicata is not a resolution on the merits of the constitutional claim, we have jurisdiction to hear this appeal. *See Cash v.*

6

*Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (stating that a decision based on res judicata is not a decision on the merits).[3]

DISCUSSION

In order for res judicata to bar Appellants' claims "four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). The parties do not dispute that the first two elements have been met. Appellants dispute the district court's findings that the third and fourth elements were met. The district court found that the Appellants were in privity with the *Montiel* plaintiffs under the doctrine of virtual representation. The district court also found that this case and the *Montiel* case had the same causes of action.

A.     Virtual Representation

The *Montiel* plaintiffs and the plaintiffs in this case are not identical; therefore, the plaintiffs in the two cases must be in privity for res judicata to apply.

---

[3] Appellees also argue that this case is governed by *St. John v. Wisconsin Employment Relations Bd.*, 340 U.S. 411, 71 S. Ct. 375, 95 L. Ed. 386 (1951). In *St. John*, the Supreme Court did hear a direct appeal after a three-judge federal court barred a claim based on res judicata, and this case has not been explicitly overruled. However, *MTM*, which was decided twenty four years after *St. John*, carved out an the exception to § 1253 and provides the Supreme Court's most current reasoning on this issue.

Privity applies when a person, though not a party to the suit, has his interests adequately represented by a plaintiff in the suit. *Pemco*, 383 F.3d at 1286. We have recognized that privity can exist under the doctrine of virtual representation, and the district court found that the facts established that Appellants in this case were virtually represented by the *Montiel* Plaintiffs.

The doctrine of virtual representation "supports a finding of privity 'when the respective interests are closely aligned and the party to the prior litigation adequately represented those interests.'" *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988)(citation omitted). We have employed the following factors to determine if virtual representation exists between parties: (1) participation in the first litigation, (2) apparent consent to be bound, (3) apparent tactical maneuvering, and (4) close relationships between the parties and non-parties. *Id*. All of these factors need not be found; "rather, we examine [the factors] in concert to determine whether there is virtual representation." *Pemco*, 383 F.3d at 1287. "Whether or not a party is a virtual representative of another is a question of fact." *Id*.

Having reviewed both the district court's order and the record, we cannot say that the district court clearly erred in finding that Appellants were virtually represented by the *Montiel* Plaintiffs. The district court engaged in an exceedingly thorough analysis of the specific facts of this case and correctly applied them to the

virtual representation factors, and we find no clear error.[4]

However, we will further discuss Appellants' argument that the district court erred by rejecting this Court's requirement that "legal accountability" exists between parties and non-parties for virtual representation to apply. We have stated that for virtual representation to apply, the party to the prior lawsuit has to be "legally accountable" to the party in the subsequent lawsuit. *Pemco*, 383 F.3d at 1289. We described legal accountability applying to the following relationships: "estate beneficiaries bound by administrators, presidents and sole stakeholders by their companies, parent corporation by their subsidiaries, and a trust beneficiary by the trustee." *Pollard v. Cocknell*, 578 F.2d 1002, 1008-09 (5th Cir. 1978).[5]

The *Montiel* plaintiffs were not legally accountable to Appellants as contemplated in *Pollard*. However, the district court made a distinction between private law issues and public law issues. The district court concluded that redistricting "is a public action that has only an indirect impact on a plaintiff's interest." *Gustafson*, 434 F.Supp. 2d at 1257. The district court held that therefore

---

[4] Appellants argue that the district court improperly applied the control theory in finding privity between the parties. However, the district court did not use the control theory in establishing privity; rather, it employed the theory of virtual representation.

[5] In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

a plaintiff need not have legal accountability to a plaintiff in a subsequent lawsuit for virtual representation to apply. *Gustafson*, 434 F.Supp. 2d 1257 n.7. This holding is consistent with United State Supreme Court and this Circuit's case law.

In *Richards v. Jefferson County, Alabama*, 517 U.S. 793, 803, 116 S Ct. 1761, 1768, 135 L. Ed. 2d 76 (1996), the Supreme Court distinguished between private causes of action and "other public action that has only an indirect impact on [a plaintiffs] interests." This Circuit, citing *Richards*, has also acknowledged the difference between the two types of actions and stated that in public law actions the Supreme Court has suggested "that there is less preclusion protection for a plaintiff who complain[s] about . . . [a] public action that has only an indirect impact on his interests." *Pemco*, 383 F.3d at 1289. Since both this case and *Montiel* case involve the public law issue of challenging Alabama's redistricting plans, we find that the district court did not err in holding that the plaintiffs in the two cases need not have had a legally accountable relationship for res judicata to apply.

B.    Same Causes of Action

Res judicata will only apply if the same causes of action were brought in both cases. The same causes of action "extends not only to precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Olmstead v. Amoco Oil Co.*, 725 F.2d 627,

10

632 (11th Cir. 1984). Claims filed in a second lawsuit are barred if they could have been raised in the earlier proceeding. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003). "The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case." *Durbin*, 793 F.2d at 1549. In determining whether the causes of action are the same, we look to the substance of the action, not their form. *Id*.

Applying these principles to this case, we find that the district court did not err in finding that the causes of action in the *Montiel* case involve the same causes of action presented in this case. The causes of action in both cases arose out of the same "operative nucleus of fact" - the 2001 redistricting plans. Furthermore, the claims in both cases involve the same "primary right and duty" in that the causes of action sought to invalidate the redistricting plans because the population deviations within the plans created a situation where votes were given unequal weight. While Appellants argue that their partisan gerrymandering claim could not have been brought by the *Montiel* Plaintiffs since they resided in different districts, the district court held, and we agree, that the partisan gerrymandering claim could have been brought before. Appellants did not raise their partisan gerrymandering claim with respect to specific districts; rather, their claim challenged the redistricting plan in its entirety. In both cases, all the claims have the same substance in that they

11

challenge the redistricting plans based on population deviations. Therefore, the application of res judicata is appropriate.[6]

Accordingly, we find that the district court did not err in finding that res judicata barred Appellants' claims and affirm.

**AFFIRMED**.

---

[6] Appellants also argue that they should be allowed to challenge Alabama's redistricting plans on partisan gerrymandering grounds, because the law surrounding partisan gerrymandering claims had become more clearly defined in light of the Supreme Court's summary affirmance in *Larios v. Cox*. While this Court has stated that res judicata is inappropriate when there has been a substantial change in the facts or law, *Jaffree*, 837 F.2d at 1469, the decision in *Larios* does not constitute a substantial change in the law. *See Larios v. Cox*, 300 F.Supp. 2d 1320, 1353 (N.D. Ga. 2004).