James H. MADISON, Jr., d/b/a Med-View Pharmacy, R. Clint Johnson, Jr., Lowrey W. Dyre, Bobby B. Howell, William H. Catchings, Sr., Anthony S. Vazzana, Mrs. Marjorie H. Williams, J. C. White, Kenneth W. Hodges, John S. Bowles and J. B. Caver, Plaintiffs,

v.

MISSISSIPPI MEDICAID COMMISSION, Jessie O. Adcock, Chairman, George S. Smith, Jimmy U. Crain, John G. Corlew, Charles M. Deaton, Don W. Richardson and Theodore Smith, B. F. Simmons, Director, and William R. Allen, Deputy Director, Mississippi Medicaid Commission, Individually and as members of the Mississippi Medicaid Commission, Defendants.

No. GC 79–154–OS–P.

United States District Court, N. D. Mississippi, Greenville Division.

March 21, 1980.

---

Edward J. Bogen, Jr., McGee & Bogen, Leland, Miss., James Robertson, Freeland & Gafford, Oxford, Miss., for plaintiffs.

A. F. Summer, Atty. Gen., State of Miss., Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon the defendants' motion to dismiss or in the alternative for summary judgment, the plaintiffs' motion for class certification, and three applications by the defendants for review of the magistrate's orders relating to discovery issues. The eleven named plaintiffs are all adult resident citizens of Mississippi who are licensed to practice pharmacy in the State, and who are the owners, in whole or in part, of pharmacies or drugstores doing business in Mississippi. They seek to represent a class composed of all pharmacists licensed in Mississippi and practicing pharmacy in the State who

> have been or are sole proprietors or general partners in retail pharmacy businesses in Mississippi or have been or are majority stockholders in corporations organized for doing business as a retail pharmacy in Mississippi and which pharmacy has been or is now a traditional, community, independently owned and operated pharmacy and who have been or are dispensing medical prescriptions for Medicaid patients under the Medical Assistance program.

In their motion for class certification, the plaintiffs allege that there are approximately 700 members of this class. The defendants in this action are the Mississippi Medicaid Commission, its seven members, and its Director and Deputy Director. All of the individual defendants are made parties in their official capacities, and are alleged to have acted under color of state law.

The actions forming the basis for the plaintiffs' complaint arise out of the defendants' implementation of Title XIX of the Social Security Act of 1935, the Medical Assistance Program (hereinafter referred to as "Medicaid"). 42 U.S.C. § 1396, et seq. Under § 1396, the federal government authorizes and appropriates sums of money "for making payments to States which have submitted, and have approved by the Secretary of Health, Education, and Welfare, State plans for medical assistance." The requirements which these plans must meet are set forth at 42 U.S.C. § 1396a. In general, these State plans must provide certain standards and methods by which individuals are to receive Medicaid payments and other forms of assistance, and also the methods by which individuals eligible for Medicaid may obtain assistance from participating doctors and pharmacies. The federal government shares with the States the cost of reimbursing participating agencies, doctors, and pharmacies for services rendered to eligible recipients. 42 U.S.C. §§ 1396a, 1396d. To insure that the purpose of the Act is carried out, the Secretary of Health, Education, and Welfare is authorized to promulgate rules and regulations relating to all aspects of the Medicaid program. 42 U.S.C. § 1302. The regulations prescribing the procedures for payments by State Medicaid agencies for Medicaid services are set out at 42 C.F.R. § 447.

On the state level, the Mississippi Medicaid law was enacted in 1969, and provides for a statewide system of medical assistance, to be administered by the Mississippi Medicaid Commission. Miss.Code Ann. § 43–13–101, et seq. (1972 & Supp.1979). In administering this program, the Commission is "authorized and empowered" to adopt rules and regulations

> Establishing reasonable fees, charges and rates for medical services and drugs; and

in doing so [the Commission] shall fix all such fees, charges and rates at the minimum levels absolutely necessary to provide the medical assistance authorized by this article; . . .

Miss.Code Ann. § 43–13–121 (Supp.1979).

The conduct about which the plaintiffs complain arises out of an alleged conflict between the language of certain federal regulations, and the language of the state statute and supporting regulations, as they relate to reimbursement to pharmacists for drugs dispensed to eligible Medicaid recipients. The applicable state statute provides, in pertinent part, that

> The commission shall provide by regulations that reimbursement for drugs shall be limited to the actual acquisition cost, plus the reasonable cost of handling, as determined by the commission.

Miss.Code Ann. § 43–13–117(9) (Supp.1979). Pursuant to this authority, the Mississippi Medicaid Commission has promulgated a regulation which provides that reimbursement to pharmacists will be based upon the *lower* of: (1) actual acquisition cost, which is the net invoice cost including quantity discounts but excluding cash discounts not exceeding 2%; (2) maximum allowable cost, which is that cost determined by the Pharmaceutical Reimbursement Board of the Department of Health, Education, and Welfare; or (3) the usual and customary retail charge for identical prescriptions.[1] This regulation was later amended to eliminate the allowance for cash discounts and to provide that the dispensing fee would be $2.50 per prescription.

The plaintiffs contend that the state's definition of "acquisition cost" in terms of "net invoice cost", is in conflict with applicable federal regulations. They contend that the federal regulations which are controlling in this situation define "acquisition cost" as

the price generally and currently paid by providers for a drug marketed or sold by a particular formulator or labeler in the package size of drug most frequently purchased by providers.

*See*, 42 C.F.R. § 50.502(e) and 45 C.F.R. § 19.2(f). According to the plaintiffs, these two methods of defining the term "acquisition cost" are in direct conflict, and the defendants' definition results in lower reimbursements to the plaintiffs than would be the result if the federal definition was followed. They allege, therefore, that the defendants have violated 42 U.S.C. § 1983 by acting under color of state law to deprive them of property without due process of law. Plaintiffs further contend that, by not taking into account their "business efficiency practices" in earning discounts from wholesalers, the defendants reimburse other pharmacists at higher amounts than the plaintiffs are reimbursed. This practice, they contend, creates a classification which denies the plaintiffs equal protection of the laws.

## I. DEFENDANTS' MOTION TO DISMISS

The defendants have now filed a motion to dismiss, or in the alternative for summary judgment, with respect to the plaintiffs' claims regarding cost reimbursement for drugs.[2] The parties have filed extensive memoranda in support of and in opposition to the motion, and the defendants have attempted to support their motion with several affidavits. It is completely within the court's discretion to determine whether or not this material outside the pleadings will be accepted. If the court were to accept these matters, the better practice would be to treat the present motion as one for summary judgment, and to follow the procedures prescribed by Rule 56, Fed.R.Civ.P. *See Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973); *Arrington v. City of Fairfield*, 414 F.2d 687 (5th Cir. 1969). The

---

1. The full text of this regulation can be found in the Appendix to this decision.

2. Defendants have admitted that the plaintiffs' remaining claims, involving the reasonableness of the dispensing and handling fee, are issues which should be reserved for trial. The defendants' motion challenges only those claims contained in paragraphs 14–18, 23(b), and 29 of the plaintiffs' complaint.

court declines to treat this motion as one for summary judgment, however, because the affidavits submitted are not comprehensive enough to enable the court to make a rational determination of a motion for summary judgment. The matter has been fully briefed, and the parties have not been given any notice or indication that the court would consider matters outside the pleadings. The plaintiffs have filed no counter-affidavits, and the court will not resolve these issues on the strength of the defendants' affidavits. *See Weisman v. Lelandais,* 532 F.2d 308, 309 n.3 (2d Cir. 1976). Defendants' motion will therefore be considered as one to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

In testing the sufficiency of the plaintiffs' complaint with respect to the costs reimbursement issues, the court is guided by the criteria established in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), in which the Supreme Court stated:

> in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.

*See also, Hepperle v. Johnston,* 544 F.2d 201 (5th Cir. 1976). The question for this court to determine, therefore, is whether or not, construed in the light most favorable to the plaintiff, the complaint states any valid claim for relief based upon the defendants' reimbursement of drug costs.

As previously stated, the paragraphs of the complaint which are challenged in the present motion relate to the defendants' regulatory scheme regarding cost reimbursement. In those paragraphs the plaintiffs allege that the state regulation constitutes the taking of property without due process of law, in that the plaintiffs are not allowed to benefit from discounts which they have earned. The applicable paragraphs of the complaint also allege that the state regulation deprives the plaintiffs of the equal protection of the laws, in that those pharmacists who do not engage in "business efficiency practices" are reimbursed at higher rates, and that the amounts allowed by the defendants are lower than those allowed in other states.

■ It is obvious from certain provisions of the Medicaid Act that Congress was aware of the limited resources which states have to devote to the Medicaid program. Section 1396 of Title 42, for example, states that the Medicaid provisions of the Social Security Act were enacted "[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish . . . medical assistance . . . ." Furthermore, 42 U.S.C. § 1396a(a)(30) states that a plan for medical assistance promulgated by the state must provide methods for payment of services, but must also insure that "payments . . . are not in excess of reasonable charges consistent with efficiency, economy, and quality of care." It must be recognized "that the federal law gives each state great latitude in dispensing its available funds." *Briarcliff Haven, Inc. v. Department of Human Resources,* 403 F.Supp. 1355, 1361 (N.D.Ga.1975). This principle has also been recognized by the Supreme Court, in *Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 25 L.Ed.2d 491, 498 (1970). It would appear, therefore, that those challenging the state's regulatory scheme have a burden in proving a "set of facts" which would support their claim for relief.

The reimbursement ceilings implemented by the State Medicaid Commission allegedly deprive the plaintiffs of due process and equal protection of law by confiscating their property and depriving them of the opportunity to take advantage of efficient business practices. The courts have long held, however, that a particular state regulation is valid so long as it does not "run afoul of some specific federal constitutional prohibition, or of some valid federal law." *Lincoln Union v. Northwestern Co.,* 335 U.S. 525, 536, 69 S.Ct. 251, 257, 93 L.Ed. 212, 221 (1948); *See also North Dakota Pharma-*

*cy Board v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Plaintiffs claim that the state regulation is in conflict with federal law in that the definition of "acquisition cost" is inapposite to the definition of the same term under federal regulations. Based upon a review of the applicable federal regulations, however, the court finds that these allegations are unfounded.

As stated previously, the regulations applicable to drug reimbursement are found at 42 C.F.R. § 447.331.[3] These regulations provide that the state agency may not pay more for prescribed drugs than

the *lower* of ingredient costs plus a dispensing fee *or* the provider's usual and customary charge to the general public.

42 C.F.R. § 447.331(a) (emphasis added). The term "cost" as used in the regulation quoted above is defined in 42 C.F.R. § 447.-332 as the *lower* of the "maximum allowable cost" (which is determined by the Pharmaceutical Reimbursement Board) or the "estimated acquisition cost" (which is defined as "the [state] agency's best estimate of what price providers generally are paying for a drug.") This language, which allows the state agency to give its "best estimate", is clearly consistent with the principle that the state has great latitude in determining how its Medicaid funds are to be distributed. The plaintiffs, however, would have this court strike down that latitude which is provided not only by statute but also by regulation. Plaintiffs contend, in their complaint as well as their memorandum in opposition to defendants' motion to dismiss, that the appropriate definition of "acquisition cost" is found at 45 C.F.R. § 19.2(f); 42 C.F.R. § 50.502(e):

"Acquisition cost" means the price generally and currently paid by providers for a drug marketed or sold by a particular formulator or labeler in the package size of drug most frequently purchased by providers,

. . . . .

It is the plaintiffs' contention that when the state statute provided that reimbursement was to be limited to "actual acquisition costs", the definition quoted above came into effect, and for the state to define the term in any other way not only contradicts the federal regulations, but also deprives plaintiffs of their property without due process.

■ There are two reasons why this argument fails. First, the definitions of "acquisition cost" cited by the plaintiffs are not those definitions applicable to Medicaid programs. The definitions in 45 C.F.R. § 19.2(f) relate to the federally operated Medicare program, as opposed to Medicaid. Similarly, the provisions of 42 C.F.R. § 50.-501 apply to federally funded programs administered by the Public Health Service. While the definitions under these programs may seem inconsistent with the alternative definitions under the Medicaid programs, this inconsistency is not a legitimate ground for asserting the invalidity of the state's definition. As one court has noted, Medicaid "is a different law designed by Congress for a different purpose than Medicare." *Rastetter v. Weinberger*, 379 F.Supp. 170, 172 (D.Ariz.1974), *aff'd.*, 419 U.S. 1098, 95 S.Ct. 767, 42 L.Ed.2d 795 (1975). Medicaid is a program designed to assist the states in providing medical care. The programs cited by the plaintiff, however, are completely federally funded. To the extent that Medicaid is more comprehensive than the other programs and gives the states great latitude in distributing their resources, the drug reimbursement regulation giving the states alternative choices is consistent with that policy. The definitions cited by the plaintiff are simply inapplicable.

■ Secondly, for this court to agree with the plaintiffs' contentions would have the effect of eliminating half of the applicable federal regulation. To adopt the plaintiffs' definition of "acquisition cost" would mean that part of the provisions of 42 C.F.R. § 447.332 would be meaningless. State agencies must pay the lower of ingre-

---

3. The full text of all applicable regulations may be found in the Appendix of this decision.

dient cost or the provider's usual and customary charge. If this court were to find that "acquisition cost" as used here should be defined as the price generally and currently paid by providers, then the definitions of cost in 42 C.F.R. § 447.332 would have no meaning in this situation. That section allows states to use their best estimates in reimbursing drug providers. The purpose of these regulations is clear: state agencies are not to pay *more* for prescribed drugs than the prevailing retail market price. That limitation is the maximum one. Below that ceiling, states may estimate the "acquisition cost" of the drug. The regulation does not guarantee any minimum payment to pharmacists, nor does it prescribe the method by which the states should estimate costs below the maximum ceiling. As the court noted in *Briarcliff Haven, Inc. v. Department of Human Resources*, 403 F.Supp. at 1362–63:

> Providers of services are not required to participate in a state's Medicaid program, but if they do choose to participate, they must agree to accept payment in accordance with the state plan provisions. . . . The Medicaid program is not designed to protect providers from the consequences of their business decisions or from business risks. The Medicaid Act *and implementing* regulations grant the states a wide discretion in determining fee structures.

(emphasis added). That discretion has not been misused here. So long as the state regulation does not conflict with the federal requirements and, indeed, is consistent with those requirements, then this court will "[not] impose upon the States [its] view of what constitutes wise economic or social policy." *Dandridge v. Williams*, 397 U.S. at 486, 90 S.Ct. at 1162, 25 L.Ed.2d at 502.

▪ As for the equal protection claims, this court is guided by the Supreme Court's decision in *Dandridge*, that "[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." Stated another way, the fact that the law results in *some* injustice or inequality does not

invalidate it if the statute is drawn on the basis of criteria reasonably related to its objective. *See Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978). This "rational basis" standard is to be applied unless the statutory classification is based upon suspect criteria or affects some fundamental right. Since under the *Pollard* case the regulation of business activities "neither affects fundamental rights nor involves a traditionally suspect classification", the court need only determine that the regulations bear a rational relationship to the purpose of the statute. 578 F.2d at 1013. Clearly, the state regulation meets that burden when it relates to the statutory limitation of reimbursement to "actual acquisition cost." Both the state statute and regulation in turn are promulgated pursuant to the federal requirement that the state plan "assure that payments . . . are not in excess of reasonable charges consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30). This is entirely consistent with the stated purpose of the Mississippi Medicaid Commission, which is to establish "fees, charges and rates at the minimum levels absolutely necessary to provide the medical assistance authorized by this article." Miss.Code Ann. § 43–13–121 (Supp.1979). Obviously, the fact that the regulation does not reimburse pharmacists for discounts which they have already received is rationally related to the purposes of efficiency and economy. Furthermore, the fact that one state's method of reimbursement is lower than that of any other state is irrelevant to a determination of whether or not the regulation is rationally related to a legitimate statutory purpose.

▪ For the foregoing reasons, the court is of the opinion that the defendants' motion to dismiss is well taken, and that the plaintiffs' complaint should be dismissed for failure to state a claim, as to all claims for violation of due process and equal protection of the laws with respect to the drug cost reimbursement issue.

## II. *PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

 The plaintiffs have also filed a motion for class certification, which is presently before the court. They contend that the action is one which meets the requirements of Rule 23(b)(2) and (3), Fed.R.Civ.P. This motion was filed on November 30, 1979, but the plaintiffs have not furnished adequate support or evidence for that motion. This lack of support for the motion could be a sufficient basis for the court denying the motion at this time. As the Fifth Circuit has stated:

It is the court's duty to determine "as soon as practicable" whether the action may be maintained as a class litigation. That duty, however, creates an obligation on counsel to assist by filing an appropriate motion supported by proper evidence. Although, in rare instances, maintainability may be determined on the basis of the pleadings (Citations omitted), if there is any genuine doubt with respect to the propriety of a class action, a preliminary evidentiary hearing is essential.

*Satterwhite v. City of Greenville*, 578 F.2d 987, 998 (5th Cir. 1978). The court went on to say that

Counsel for the class have the primary responsibility for pressing a class action claim. They do not satisfy their responsibilities by simply affixing the class action label to a suit and depositing it with the clerk. . . . [I]t is critically important for both counsel and the court to accord to the preliminary procedural issues in class actions the uncompromising attention that they deserve.

578 F.2d at 999. The responsibility of counsel is also set forth in the Local Rules of this court, which provide that "[u]ntil the issue of class certification has been decided, counsel shall give priority to discovery directed to the class issue." Local Rule C–7. This mandate of priority in discovery has not been followed in the action sub judice, and the court is now presented with the unfortunate situation of having volumes of papers submitted on every subject except that of class certification. As a result, the action is not in a posture for the court to determine the propriety of its going forward as a class action. The plaintiffs' motion will be carried with the case, for determination by the court at such time as all evidence relevant to the class issue has been introduced.

## III. *DISCOVERY ISSUES*

 The defendants have now filed three applications for review of the magistrate's orders relating to discovery issues in the instant case. The first application, filed on November 30, 1979, relates to the magistrate's order of November 29, 1979. This order granted a waiver of the limitation of the number of interrogatories which the plaintiffs could submit to the defendants. In their briefs submitted in support of and in opposition to this application for review, the parties have gone far afield in arguing both the merits of the case and the relevancy of the material sought in discovery; they have not, however, addressed themselves to the necessary issue. Rule M–3(b)(2) of the Local Rules of this court provides that:

No ruling of a magistrate in any matter which he is empowered to hear and determine shall be reversed, vacated or modified on appeal unless the district judge shall determine that the findings of the magistrate are clearly erroneous, or that the magistrate's ruling is contrary to law or constitutes an abuse of discretion.

Defendants contend that the plaintiffs did not demonstrate "good cause" for the waiver, and that the magistrate was erroneous in finding such "good cause". They contend that the fact that requests for admissions were filed which covered the same areas of discovery as the interrogatories, renders those interrogatories superfluous. As the plaintiffs point out, however, the interrogatories and requests for admission were submitted simultaneously, designed so that if the defendants refused to admit a certain request, they should then answer the related interrogatory. The court notes that the interrogatories request the defendants to relate what they consider the facts to be. The scope of the questions is certainly relevant, pursuant to Rules 26(b)(1) and

33(b), Fed.R.Civ.P., and cannot be objected to on such grounds. Under the circumstances, the court finds that the magistrate was not "clearly erroneous" in finding good cause for the waiver.

Defendants' second application for review relates to the magistrate's order of January 10, 1980, sustaining plaintiffs' motion to compel discovery with respect to plaintiffs' request for admissions. These requests, mentioned above, would have the defendants admit to the various dispensing fee allowances in all other states participating in Medicaid. On November 29, 1979, defendants filed their response, in which they denied two requests and objected to the remainder as beyond the scope of discovery. Plaintiffs then filed a motion to compel discovery, which was sustained by the magistrate. In his order, the magistrate found that the defendants would not be burdened by verifying the information sought in the requests for admissions. Defendants maintain that the question of dispensing fee allowances in other states is not relevant to any issue which will be presented at trial. It should be noted, however, that the 1970 amendments to the Federal Rules of Civil Procedure deleted the requirement in Rule 36 that requests relate to "relevant" statements and the scope of inquiry is now just as broad as the other methods of discovery. Since these requests for admission relate to the issues regarding the dispensing fee—issues which are not disposed of by this decision—the court determines that they are not beyond the permissible scope of discovery. Furthermore, the court agrees with the magistrate that the defendants could verify the information easily and that not doing so would fail to meet the "reasonable inquiry" standard of Rule 36(a).

Finally, defendant appeals from the magistrate's order of March 6, 1980, granting defendants' motion to reconsider the magistrate's order of February 13, 1980. In the first order, the magistrate extended the time within which plaintiffs could respond to defendants' interrogatories and requests for production until 30 days after the disposition of defendants' motion to dismiss. These discovery matters relate to the dispensing fee issues, which still survive in this action. The magistrate further extended the time for completing all discovery until 60 days after disposition of defendants' motion to dismiss. In his order of March 6, 1980, the magistrate found that all of the interrogatories except number 12, and all of the requests for production, except number 10, were relevant to those claims of the plaintiffs which are not dismissed by this decision. The magistrate then extended the time for response to 60 days, not dependent upon the disposition of the defendants' motion to dismiss. This was necessary because of the "extensive nature of the requests." The court finds no basis for holding that the magistrate's ruling is either clearly erroneous or an abuse of discretion.

Summarizing the holdings in the court's memorandum, the court finds that (1) the defendants' motion to dismiss is well taken and should be sustained; (2) the plaintiffs' motion for class certification is carried with the case for determination by the court at such time as all relevant evidence has been introduced; and (3) the defendants' three applications for review of the magistrate's orders are not well taken and should be denied. The court will enter an appropriate order.

## APPENDIX

### A. *Code of Federal Regulations*

The federal Medicaid regulations applicable to drug reimbursement are found at 42 C.F.R. §§ 447.331–.334. The text of these regulations is as follows:

§ 447.331 Drugs: Upper limits of payment.

(a) The agency may not pay more for prescribed drugs than the lower of ingredient cost plus a dispensing fee or the provider's usual and customary charge to the general public.

(b) Cost must be determined in accordance with § 447.332.

(c) The dispensing fee must be set by the agency under § 447.333.

§ 447.332 Cost of drugs.

(a) Multiple-source drugs. A "multiple-source drug" means a drug marketed or sold by two or more manufacturers or labelers or a drug marketed or sold by the same manufacturers or labeler under two or more different proprietary names or both under a proprietary name and without such a name. Except as specified in paragraph (b), the cost of each multiple source drug designated by the Pharmaceutical Reimbursement Board (45 CFR Part 19) and published in the Federal Register must be the lower of

(1) The maximum allowable cost (MAC) established by the Board and published in the Federal Register; or

(2) The estimated acquisition cost as described in paragraph (c) of this section.

(b) Exception: Certification of brand name drugs. (1) The cost of a multiple-source drug is not limited to the MAC if a physician certifies in his own handwriting that, in his medical judgment, a specific brand is medically necessary for a particular recipient.

(2) A checkoff box on a form is not applicable but a notation like "brand necessary" is allowable.

(3) The agency may allow providers to keep the certification forms if the forms will be available for inspection by the agency or HEW.

(c) All other drugs. (1) The agency must set the cost of all other prescribed drugs at the estimated acquisition cost.

(2) "Estimated acquisition cost" means the agency's best estimate of what price providers generally are paying for a drug.

(3) The basis for the estimate must be the package size providers buy most frequently.

Note.—To help medicaid agencies with these estimates, HEW makes available information, on a current basis, on the acquisition cost of the most frequently prescribed drugs.

§ 447.333 Dispensing fee.

* AAC–Actual Acquisition Cost is defined as net invoice cost including quantity discounts, free goods, and rebates, excluding cash discounts not exceeding 2%.

(a) The agency may set the dispensing fee by taking into account the results of surveys of the costs of pharmacy operations including—

(1) Operational data;

(2) Professional services data;

(3) Overhead data; and

(4) Profit data.

(b) The dispensing fee may vary according to—

(1) Size and location of pharmacy;

(2) Whether the drug is a legend item (for which Federal law requires a prescription) or nonlegend item; and

(3) Whether the drug is dispensed by a physician or an outpatient department of an institution.

(c) The dispensing fee may also vary for drugs furnished recipients in institutions by a pharmacy using a unit dose system. In those cases—

(1) The dispensing fee is added to the ingredient cost of the drug actually used; and

(2) The fee is either—

(i) An amount added to the cost of each unit dose; or

(ii) A daily or monthly capitation rate per recipient being furnished drugs.

§ 447.334 Upper limits for drugs furnished as part of services.

The upper limits for payment for prescribed drugs in this subpart also apply to payment for drugs provided as part of skilled nursing facility services and intermediate care facility services and under prepaid capitation arrangements.

B. *Mississippi Medicaid Commission Regulation*

Reimbursement for all drug claims will be based on the *Lower* of (1) AAC * ingredient cost determined for the drug and in the quantity dispensed, plus the allowable dispensing fee; or (2) MAC ** ingredient cost as set by the Mississippi Medicaid Commission plus the allowable dispensing fee; or (3) the usual and cus-

** MAC–Maximum Allowable Cost is that cost determined by HEW's Pharmaceutical Reimbursement Board and published in the Federal Register or the Maximum lowest priced

tomary retail charge *** for all identical prescription. °

Usual and customary price on non-legend or over-the-counter drugs is to be the shelf price.

therapeutic equivalent drugs certified or, approved by the FDA, and which are generally available in Mississippi.

*** Usual and Customary Charge for legend prescription drugs is determined to be the prices charged to the general public. Medicaid defines general public as the patient group accounting for the largest number of non-Medicaid prescriptions from the individual pharmacy, but does not include patients who purchase or receive their prescriptions through other third party payers; i. e., Blue Cross and Blue Shield, Aetna, Metropolitan Life, Paid Prescription, etc. If a pharmacy offers discount prices to a portion of its customers (i. e., 10 percent discount to senior citizens), those lower prices would be excluded from the usual and customary calculations unless the patients receiving the favorable prices represent more than 50 percent of the store's prescription volume.