UNITED STATES of America, etc., Plaintiffs,

v.

BRUNO'S, INC., et al., Defendants.

No. CivA 98–A–1368–N.

United States District Court, M.D. Alabama, Northern Division.

June 30, 1999.

Janet Reno, Department of Justice, Washington, DC, Lloyd W. Gathings, II,

Matthew L. Evans, Gathings & Associates, Birmingham, AL, for The United States of America ex rel. Lloyd W. Gathings II dba Gathings and Associates, plaintiff.

Matthew C. McDonald, Thomas J. Woodford, Miller, Hamilton, Snider & Odom, Mobile, AL, W. Mark Anderson, IV, Miller, Hamilton, Snider & Odom, Montgomery, AL, for Eckerd Drugs Inc., Drugs for Less, Inc., Harco Drug Inc., Kmart Corp., Revco Discount Drug Center and for Winn Dixie Montgomery, Inc., defendants.

Steven A. Benefield, David L. Faulkner, Jr., Rives & Peterson, Birmingham, AL, for Wal-mart Stores, Inc., defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This is a qui tam action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* The action was originally filed under seal on December 8, 1998, pursuant to 31 U.S.C. § 3730(b)(2). On February 11, 1999, the United States of America filed a Notice of Election to Decline Intervention. The Complaint was then unsealed and the Relator was allowed to proceed.

In this action, the Plaintiff/Relator asserts that the Defendants, who operate pharmacies in the state of Alabama, defrauded the federal government by charging the Alabama Medicaid Agency a higher prescription "dispensing fee" than allowed by the Alabama Medicaid provider contract. Before the court is a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement (File Doc. 22), filed by Defendants Eckerd Drugs, Inc.; Drugs for Less, Inc.; Harco Drug, Inc.; Kmart Corp.; Revco Discount Drug Center; and Winn Dixie Montgomery, Inc., on April 27, 1999.[1] Plaintiff filed a Brief in

---

1. The Defendant Valu–Rite, Inc. was named as a moving Defendant, apparently through inadvertence. The moving attorneys had filed separate Notices of Appearance for all Defendants named as movants except Valu–Rite, Inc. Valu–Rite Pharmacy was shown in the Certificate of Service, Valu–Rite, Inc. was deleted as a moving party in subsequent filings,

Opposition (File Doc. 27) on May 20, 1999. Defendants filed a Reply Memorandum (File Doc. 30) on June 1, 1999.[2] For reasons to be discussed, the Defendants' motion is due to be GRANTED.

## II. *MOTION TO DISMISS STANDARD*

Defendants move to dismiss the Complaint for failure to state a claim for which relief can be granted. A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Complaint are as follows:

The Plaintiff/Relator, Lloyd W. Gathings II, d/b/a Gathings and Associates, is a sole proprietorship which brings this action on behalf of the United States of America. Plaintiff asserts that he has direct and independent information of the Defendants' alleged fraudulent behavior, and qualifies as a "relator" or "original source" under the False Claims Act.

In Alabama, any pharmacy dispensing prescriptions to Medicaid recipients must sign a Provider Contract with the Alabama Medicaid Agency. Section 1, subpart 12 of the contract, attached to the Complaint, states, "In no event shall the Medicaid payment exceed the amount charged to the general public for the same service."

The dispensing fee for prescriptions which Medicaid pays is $5.40 per prescription. The dispensing fee paid by Blue Cross–Blue Shield of Alabama is $2.30 per prescription. Plaintiff contends that the $5.40 dispensing fee charged for Medicaid prescriptions is in clear violation of the contracts between Medicaid and the Defendants, and the Defendants knowingly and willingly perpetrated a fraud on the United States by charging higher rates to Medicaid participants. Plaintiff has brought two counts against the Defendants. Count I states a claim for Fraud based on the Defendants' knowing submission of false claims to the United States. Count II states a claim for Breach of Contract based on the amount charged as a dispensing fee on prescriptions paid by Medicaid.

## IV. *DISCUSSION*

■ The False Claims Act "prohibits false or fraudulent claims to government payment." *United States ex rel Williams v. NEC Corp.,* 931 F.2d 1493, 1496 (11th

---

and a letter of May 26, 1999 from moving Defendants' counsel to the Clerk of Court states that Valu–Rite is not to be included. The file shows no service on Valu–Rite, Inc. On March 29th, 1999, the court dismissed the case against Defendants Bruno's Inc. and Food World, Inc., without prejudice, on motion by the Plaintiff. *See* File Doc. 19. Defendant Wal-mart Stores, Inc., represented by separate counsel, filed an Answer on April 28, 1999. *See* File Doc. 24.

**2.** Defendants filed another Reply Memorandum (File Doc. 31), without explanation, on June 2, 1999. Pursuant to the court's Order on May 27, 1999, the Defendants were to file their Reply brief no later than June 1, 1999. Therefore, the court has considered only the Reply Brief filed on June 1, 1999.

Cir.1991). The qui tam provision of the False Claims Act permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government. 31 U.S.C. § 3730(b); *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 941, 117 S.Ct. 1871, 1874, 138 L.Ed.2d 135 (1997). On December 8, 1998, the Plaintiff commenced this qui tam action by filing the Complaint under seal and serving a copy on the United States, as required by 31 U.S.C. § 3730(b)(2). The United States elected not to intervene in this action. *See* Government's Notice of Election to Decline Intervention (File Doc 5).

The Medicaid program is a cooperative state-federal program which provides medical assistance to certain individuals with limited economic means. *See* 42 U.S.C. § 1396. States that choose to participate in Medicaid must submit a plan for approval by the United States Department of Health and Human Services. *See id.* § 1396a. Upon approval, the state becomes entitled to federal funds. *See id.* § 1396b. The state administers its Medicaid program. In Alabama, the Medicaid Agency of the State of Alabama is "the single state agency charged with responsibility for administering the Alabama Medicaid Program." Ala.Code § 22–6–7.

A participating state's plan may include expenditures for prescription drugs among reimbursable costs. See 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(12). Alabama's state plan includes prescription drugs among reimbursable costs. *See* Alabama Medicaid Rule No. 560–X–16–.01, attached as Appendix 1 to Memorandum in Support of Defendants' Motion to Dismiss (File Doc. 23).[3] Defendants in this action are pharmacies which have signed a provider contract with the Alabama Medicaid Agency to participate in the Medicaid program.

A State plan must "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area...." 42 U.S.C. § 1396a(30)(A). Under the authority of 42 U.S.C. § 1302, the Secretary of Health and Human Services "shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [she] is charged under this chapter." Several regulations have been implemented to control the cost of prescription drugs. *See* 42 C.F.R. § 447.300; 447.331–334.

The federal regulations set upper limits for reimbursements for prescription drugs. In their original form, the federal regulations directed states not to "pay more for prescribed drugs than the lower of ingredient cost plus a reasonable dispensing fee or the provider's usual and customary charge to the general public." *See Pharmaceutical Society of New York, Inc. v. Cuomo*, 856 F.2d 497, 498–99 (2nd Cir. 1988) (quoting the original text of 42 C.F.R. § 447.331(a)). The current version of the federal regulations differentiates between "multiple source drugs," i.e., generic drugs, and other drugs. 42 C.F.R. §§ 447.301; 447.331–332. The Health Care Financing Administration ("HCFA") sets specific upper limits for reimbursement of certain multiple source drugs. 42 C.F.R. § 447.332. Reimbursement of other drugs continues to be based on the requirement that it "must not exceed in the aggregate,

**3.** The chapter of the Alabama Medicaid Rules relating to pharmacy services may be found online at http://www.medic aid.state.al.us/manuals/admin-code/ad_ch_16.htm.

payment levels that the agency has determined by applying the lower of the—(1) Estimated acquisition costs plus reasonable dispensing fees established by the agency; or (2) Providers' usual and customary charges to the general public." 42 C.F.R. § 447.331(b).

Federal regulations mandate that a State plan meet the requirements set forth in the above regulations, and the state Medicaid agency must not pay more than the upper limits described. 42 C.F.R. §§ 447.302; 447.304(a). An Alabama Medicaid Agency regulation addressing reimbursement from Medicaid for covered drugs provides in part as follows:

(2) Multiple Source Drugs. Reimbursement for covered multiple source drugs in the Medicaid Program shall not exceed the lowest of:

(a) The federally mandated upper limit (FUL) for certain multiple source drugs as established and published by HCFA plus a reasonable dispensing fee as discussed in item (4)[sic] below;

(b) The Alabama Estimated Acquisition Cost (AEAC) for the drug plus a reasonable dispensing fee . . .

The provider's Usual and Customary charge to the general public for the drug;

(d) The calculated State Maximum Allowable Cost (MAC).

. . . .

(3) Other Drugs. Reimbursement for covered drugs other than multiple source drugs shall not exceed the lower of:

(a) The Alabama Estimated Acquisition Cost (AEAC) for the drug plus a reasonable dispensing fee; or

(b) The provider's Usual and Customary charge to the general public for the drug.

. . . .

(5) Dispensing fees set by the Agency. This fee is set by the agency and reviewed periodically for reasonableness and, when deemed appropriate by Medicaid, may be adjusted considering such factors as inflation and/or fee studies or surveys. A differential dispensing fee shall be paid for non-retail providers.

Alabama Medicaid Rule No. 560–X–16–.06, attached as Appendix 1 to Memorandum in Support of Defendants' Motion to Dismiss (File Doc. 23).

The parties agree that the central issue in this action is the definition of "general public" in the provider contract. The contract provision at issue states, "In no event shall the Medicaid payment exceed the amount charged to the general public for the same service." Provider Contract, section 1, subpart 12, attached to Compl. The contract does not define "general public." Plaintiff asserts that the meaning of "general public" in the provider contract is a question of fact. Defendants contend that the definition of "general public" requires interpretation of an administrative regulation, and thus, is a question of law for the court to decide.

■ The contract provision at issue clearly reflects the requirement in the state and federal regulations that the Medicaid reimbursement at least not exceed the usual and customary charge to the "general public." Moreover, section 1, subpart 4 of the provider contract states, "This contract is deemed to include the applicable provisions of the State Plan, Alabama Medicaid Administrative Code, and all State and Federal laws and regulations." Therefore, the court agrees with the Defendants that this case turns on interpretation of an administrative regulation. Interpretation of administrative regulations is a question of law. *See Rocky Mountain Radar, Inc. v. Federal Communications Commission,* 158 F.3d 1118, 1123 (10th Cir.1998); *Bersani v. United States Environmental Protection Agency,* 850 F.2d 36, 46 (2nd Cir.1988); *Smith v. Sorensen,* 748 F.2d 427, 433 (8th Cir.1984); *United States v. Seaboard Coast Line R. Co.,* 368 F.Supp. 1079, 1083 (M.D.Fla. 1973).

Thus, it is appropriate for the court to determine the meaning of the phrase "general public" in the federal and state regulations. Neither the federal nor state regulations expressly define the phrase. Defendants contend that "general public" unambiguously means "a cash customer, i.e., someone who pays the retail price for his or her prescription without financial assistance from any other source" and "does not include a third-party payer like Blue Cross–Blue Shield." Memorandum in Support of Defendants' Motion to Dismiss (File Doc. 23) at 3. Plaintiff contends that "general public" refers to "any person who does not receive assistance for payment of prescriptions through Medicaid." Plaintiff's Brief in Opposition (File Doc. 27), at 5.

Defendants cite the following definition of "general public" attributed to the Mississippi Medicaid Commission:

> Usual and Customary Charge for legend prescription drugs is determined to be the prices charged to the general public. Medicaid defines general public as the patient group accounting for the largest number of non-Medicaid prescriptions from the individual pharmacy, but does not include patients who purchase or receive their prescriptions through other third party payers; i.e., Blue Cross and Blue Shield, Aetna, Metropolitan Life, Paid Prescription, etc. If a pharmacy offers discount prices to a portion of its customers (i.e., 10 percent discount to senior citizens), those lower prices would be excluded from the usual and customary calculations unless the patients receiving the favorable prices represent more than 50 percent of the store's prescription volume.
>
> Usual and customary price on non-legend or over-the-counter drugs is to be the shelf price.

*Madison v. Mississippi Medicaid Commission*, 86 F.R.D. 178, 188 n.*** (N.D.Miss.1980). Plaintiff contends that reference to the *Madison* opinion is "without merit" because the court in *Madison*

did not have before it an issue regarding the amount of dispensing fees, Alabama Medicaid has not expressly defined "usual and customary charge" with regard to prescription drugs, and the Mississippi state plan is different from Alabama's in several areas.

As noted above, state regulations are intertwined with the federal regulations governing upper limits for Medicaid reimbursement. Both the Alabama Medicaid Agency and the Mississippi Medicaid Commission promulgated rules based on the federal regulations. Although the *Madison* court referred to a definition of "usual and customary" provided by the Mississippi Medicaid Commission, the court also discussed the terms in the federal regulations. The court noted that under 42 C.F.R. § 447.331 (1980), state agencies must pay the lower of "ingredient cost plus a dispensing fee or the provider's usual and customary charge to the general public." The court then stated, "The purpose of these regulations is clear: state agencies are not to pay more for prescribed drugs than the prevailing retail market price. That limitation is the maximum one. Below that ceiling, states may estimate the 'acquisition cost' of the drug. The regulation does not guarantee any minimum payment to pharmacists, nor does it prescribe the method by which the states should estimate costs below the maximum ceiling." *Madison*, 86 F.R.D. at 184.

■ This court agrees that, in the context of the federal and Alabama regulations, "general public" refers to customers paying the prevailing retail price, and does not include those covered by third-party payers such as Blue Cross–Blue Shield. The Alabama Medicaid Agency regulations set forth alternative upper limits for reimbursement. One such alternative, the provider's "usual and customary charge to the general public," does not contemplate a dispensing fee. Other alternatives, such as the Alabama Estimated Acquisition Cost or the Federally Mandated Upper

Limit (for certain multiple source drugs), allow for a reasonable dispensing fee.

Plaintiff conflates the separate alternatives by asserting that Blue Cross–Blue Shield's lower dispensing fee causes the state's payment to exceed the cost to the general public. The "usual and customary charge to the general public," however, does not involve a comparison of dispensing fees which Medicaid pays with those paid by other third-party payors like Blue Cross–Blue Shield. Instead, the clear meaning of the phrase, based on the structure of the state and federal regulations, is the retail or billed price paid directly by customers without assistance from third-party payors. Customers for whom Blue Cross–Blue Shield pays the cost of prescription drugs are not members of the "general public," as that phrase is used in the regulations.

Available evidence of the state agency's interpretation is in accord with the court's finding. With respect to over-the-counter medications, the Alabama Medicaid Administrative Code provides only one option for reimbursement: "Pharmacists must submit the usual and customary charge (the shelf price paid by the general public) to Medicaid for payment of over-the-counter products. An additional dispensing fee should not be submitted to Medicaid." Alabama Medicaid Rule 560–X–16–.12(4). Additionally, the Defendants have submitted an Alabama Medicaid Agency publication entitled "Primary Pharmacy Audit Components." *See* Defendants' Memorandum, App. 2, available online at http://www.medicaid.state.al.us/about/rxaudit.htm. Under the heading "Usual & Customary (U & C)," the text states, "For specified products, submitted charges will be compared to cash price to general public." *See id.*

■ It is apparent that the Alabama Medicaid Agency considers the "usual and customary charge to the general public" to be the retail price of the drugs. Thus, even if the court considered the language at issue ambiguous, it would reach the

same result. When resolution of a dispute involves interpretation of an administrative regulation, a court "must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt." *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). The administrative interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* "[A]bsent clear and unambiguous language in the federal regulation, a court must give deference to any reasonably acceptable interpretation by the federal agency or, in the absence of a federal interpretation, by the state agency." *Yelder v. Hornsby,* 666 F.Supp. 1518, 1520 (M.D.Ala.1987) (Thompson, J.).

Plaintiff offers the definition of "usual and customary" in Pennsylvania regulations to support his proposed definition of "general public." In *Rite Aid of Pennsylvania, Inc. v. Houstoun,* 171 F.3d 842 (3rd Cir.1999), a pharmacy brought a procedural challenge against the Pennsylvania Department of Public Welfare's promulgation of revised regulations governing reimbursement for prescription drugs provided to Medicaid recipients. As part of the revised regulations, the Department changed the definition of "usual and customary" to state as follows:

Usual and customary charge—The pharmacy's lowest net charge an MA recipient would pay for a prescription as a non-Medicaid patient at the time of dispensing for the same quantity and strength of a particular drug or product, including all applicable discounts, such as special rates to nursing home residents, senior citizens, or other discounts extended to a particular group of patients. This lowest net price does not apply to special in-store rates or discounts extended to charitable organizations, religious groups, store employees and their families, nonprofit organizations, members of the medical profession or other similar non-Medicaid groups.

55 Pa.Code § 1121.2. The court described the effect of the revision as requiring "pharmacies to reduce their usual and customary charge for a given prescription to include any discounts the pharmacy would have given the Medicaid recipient if the recipient had not been covered by Medicaid, i.e., as if they had paid cash or been covered by a third-party payor." *Rite Aid*, 171 F.3d at 848.

Plaintiff in the present case apparently construes the revised definition issued by the Pennsylvania Department of Public Welfare as requiring that the state reimburse pharmacies at a rate equal to or lesser than the rate charged other third-party payors. An early proposal by the Department actually suggested "requiring pharmacies to charge the Department the lowest rate they charged any other third-party payor, including private insurers." *Id.* at 847. The Department decided on a reimbursement scheme, however, which reduced the estimated acquisition cost for brand name drugs, established certain limits for generic drugs, and increased the dispensing fee by fifty cents per prescription. *See id.* at 848. Data on which the Department relied indicated that, even with the proposed changes, the state's reimbursement rates would be higher than any third-party payor's rates. *See id.* Such a result would run afoul of the regulations if the Plaintiff's interpretation of "usual and customary" were correct.

It is apparent that the revised definition cited in *Rite Aid* was not intended to require pharmacies to charge the state the lowest rate charged to any other third-party payor. Instead, the definition requires pharmacies to incorporate any discounts from the retail price given to certain sectors of the general population into the upper limit for Medicaid reimbursement. Explaining the revised definition, the Department stated as follows:

> The Federal regulations prohibit Medicaid programs from paying pharmacies more than the pharmacy's usual and customary charge to the general public.

The Department currently defines the pharmacy's "usual and customary charge" as its most frequent charge for the same drug, in the same strength and the same quantity within the same calendar month. At the time it was developed, most pharmacies had only one or a few pricing levels for prescriptions. Today, some pharmacies may offer special prices to certain sectors of the population such as discounted prescriptions for senior citizens, nursing home residents or other groups of the general population.

To be able to determine more easily the pharmacy's "usual and customary charge" when billing the Department, the pharmacist must only take into consideration the type of Medicaid patient being served. If a Medicaid patient meets the qualifications of a pharmacy's special group or inclusive category of customers, and it is the policy of that pharmacy to extend that specific group a special rate that includes certain discounts, special promotions or other programs initiated to reduce prescription prices, the pharmacy must also extend the same rate to the Department for that Medicaid recipient.

25 Pa.Bull. 3978, 3980. Furthermore, the Department noted, "Although the Department requires pharmacies to bill at their usual and customary charge, the Department will set its maximum payment amount to pharmacies at the amount calculated by the EAC plus a dispensing fee." *Id.* Clearly, the "usual and customary charge to the general public," as defined by the Pennsylvania Department of Public Welfare, represents billed charges and is only relevant to the amount of a dispensing fee because it establishes a limit which the state's reimbursement cannot exceed. Therefore, the Pennsylvania regulations do not support Plaintiff's claims.

Plaintiff's claims rest solely on allegations that, by charging Medicaid higher dispensing fees than those charged to third-party providers, Defendants know-

ingly violated a written agreement to provide prescriptions at an amount not in excess of the price charged to members of the "general public." The contractual provision at issue was lifted from federal and state regulations which refer to the "usual and customary charge to the general public" as an upper limit for Medicaid reimbursement. From the structure of the regulations, it is clear that the "usual and customary charge to the general public" refers to the retail price or billed charges, and does not refer to dispensing fees charged to other third-party providers. There is no requirement in the federal and state regulations, or the provider contract, that reimbursement from Medicaid not exceed reimbursement amounts provided by other third-party providers, such as Blue Cross–Blue Shield. Furthermore, while Plaintiff bases both his fraud claim and his breach of contract claim against these Defendants on the premise that they defrauded the government and breached their Provider Contracts with the Alabama Medicaid Agency by charging dispensing fees in an unlawful amount, he completely ignores the fact that it is the Alabama Medicaid Agency itself, and not the Defendants, that sets the amount of the dispensing fee. 42 C.F.R. § 447.331(b)(1); Medicaid Rule No. 560–X–16–.06(5). Defendants merely charge the fee Medicaid tells them to charge.

## V. CONCLUSION

For the reasons stated above, "it appears beyond doubt that the Plaintiff can prove no set of facts in support of the claims in the Complaint that would entitle him ... to relief," *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229, and the Motion to Dismiss filed by Defendants Eckerd Drugs, Inc.; Drugs for Less, Inc.; Harco Drug, Inc.; Kmart Corp.; Revco Discount Drug Center; and Winn Dixie Montgomery, Inc., is due to be GRANTED.[4] A separate Order

will be entered in accordance with this opinion.

## ORDER

On this day the court entered its Memorandum Opinion holding that the Motion to Dismiss filed by six of the Defendants was due to be granted and the Complaint dismissed as to them for failure to state a claim upon which relief can be granted. The same reasoning set out in that Memorandum Opinion would apply to the Plaintiff's claim against the Defendant Wal–Mart Stores, Inc. Therefore, although that Defendant has not filed a motion to dismiss, the first affirmative defense contained in its Answer is that, "The Complaint fails to state a claim against this Defendant upon which relief can be granted." The court will treat that defense as a Motion to Dismiss, and will dismiss the claims against Wal–Mart Stores, Inc. for the same reasons that the claims are dismissed against the moving Defendants. Furthermore, as to the one remaining Defendant, Valu–Rite, Inc., the file shows that no service has been had on that Defendant and that, in fact, the Plaintiff has not attempted service by having a summons issued and service attempted by certified mail, as with all other Defendants. Therefore, this action is due to be dismissed without prejudice as to that Defendant pursuant to Rule 4(m), *Fed.R.Civ.P.* Accordingly, it is hereby ORDERED as follows:

1. The Motion to Dismiss filed by Defendants Eckerd Drugs, Inc.; Drugs For Less, Inc.; Harco Drug, Inc.; Kmart Corporation; Revco Discount Drug Center; and Winn Dixie Montgomery, Inc. is GRANTED, and the Complaint is DISMISSED with prejudice as to those Defendants.

2. The Motion to Dismiss contained in the Answer of the Defendant Wal–Mart Stores, Inc. is GRANTED, and the Com-

---

**4.** Because of the court's resolution of the Plaintiff's claims, it is unnecessary to reach the issue of whether Plaintiff/Relator lacks standing to assert a breach of contract claim under the False Claims Act.

plaint is DISMISSED with prejudice as to that Defendant.

3. This action is DISMISSED without prejudice as to the Defendant Valu–Rite, Inc.

4. This case now being fully disposed of, costs are taxed against the Plaintiff.